**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JAMES HUGH BRENNAN III; DOUGLAS ALBERT DYER; and BROAD STREET VENTURES, LLC,**<br><br>**Defendants,**<br><br>**and**<br><br>**CAROLE JOHNSTON BRENNAN; and ALISON F. DYER,**<br><br>**Relief Defendants.** | : | **Civil Action No.** |

## <u>COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF</u>

Plaintiff, Securities and Exchange Commission (the "Commission"), files this Complaint and alleges as follows:

## OVERVIEW

1. This matter involves an offering fraud that began in approximately 2008 and continues to the present, which was conducted by Defendants James Hugh Brennan, III ("Brennan") and Douglas Albert Dyer ("Dyer"), working through their company, Broad Street Ventures, LLC ("Broad Street") (collectively "the Defendants.")

2. Although the offering documents stated that only $800,000 would be raised in total for the Scenic City Companies, Brennan and Dyer offered and sold over 45 million shares in eight related companies known as Scenic City F10 I-VIII (collectively, "the Scenic City Companies"), and raised over $5 million dollars from over 240 investors.

3. Investors were told that the offerings were to be used to capitalize the Scenic City Companies, which would register their common stock with the Commission, such that they would be publicly traded, and then acquire small private businesses. In fact, although the Defendants have been representing since 2008 that they are preparing to file Form 10 registration statements with the Commission, the Defendants have never filed such statements, which are the documents used to register companies' securities with the Commission, and there have been no

investments in other businesses. Virtually all of the funds were instead transferred to Brennan and Dyer and/or used for other purposes.

4. Although they touted their experience in the securities industry, Brennan and Dyer also failed to disclose their disciplinary histories with FINRA (the Financial Industry Regulatory Authority) and the states of California and Tennessee to investors. FINRA previously barred Brennan from association with a broker-dealer and suspended Dyer from the industry for 60 days.

5. Relief Defendants Carole Johnson Brennan ("Ms. Brennan") and Alison F. Dyer ("Ms. Dyer") have obtained funds or other assets to which they have no legitimate claim, and have been unjustly enriched thereby. Specifically, from 2010 through January 2015, Ms. Brennan received $30,000 from Brennan's account and Ms. Dyer received $286,000 from Dyer's account. The sources of these funds were transfers from Broad Street's bank account, which in turn received the vast amount of its funding from investors in the Scenic City Companies.

## VIOLATIONS

6. The Defendants have engaged and, unless restrained and enjoined by this Court, will continue to engage in acts and practices that constitute and will constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act")

[15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

7. The Commission brings this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v], and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)], to enjoin the Defendants from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, and transactions, acts, practices, and courses of business of similar purport and object, for civil penalties and for other equitable relief.

8. This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. § 77t and 77v], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

9. The Defendants, directly and indirectly, made use of the mails, the means and instruments of transportation and communication in interstate commerce and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this Complaint, and made use of the mails and the means or instrumentalities of interstate commerce to

effect transactions, or to induce or to attempt to induce the offering fraud alleged in this Complaint.

10. Venue is proper in this Court as certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act and the Exchange Act occurred in the Eastern District of Tennessee. In addition, Brennan and Dyer reside, and Broad Street is located, in the Eastern District of Tennessee.

11. The Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and courses of business alleged in this Complaint, and in transactions, acts, practices, and courses of business of similar purport and object.

## THE DEFENDANTS AND RELIEF DEFENDANTS

12. Brennan, 67, resides in Chattanooga, Tennessee. He previously held Series 7, 8, 24 and 63 securities licenses and worked for several broker dealers until 1996.

13. Dyer, 56, resides in Chattanooga, Tennessee. He previously held Series 7, 63 and 65 securities licenses and worked for several broker dealers until 1997.

14. Broad Street Ventures, LLC, is a Tennessee limited liability company

located in Chattanooga, Tennessee. Brennan and Dyer are its principals and each has a half-ownership interest in the company. Other than an office assistant, Brennan and Dyer are Broad Street's sole employees.

15. Carole Johnston Brennan, age unknown, is Brennan's spouse and a resident of Chattanooga, Tennessee.

16. Alison F. Dyer, age unknown, is Dyer's spouse and a resident of Chattanooga, Tennessee.

## THE FRAUDULENT SCHEME

### A. The Scenic City Offerings

17. Starting in 2008 and continuing at present, Brennan and Dyer, acting through Broad Street, have engaged in a continuous offering of stock in eight separate, but similarly named companies, Scenic City F10 I, Inc. through Scenic City F10 VIII, Inc. (collectively "the Scenic City Companies."). Each investment was to be apportioned equally among the Scenic City Companies.

18. To date, Brennan and Dyer have raised over $5 million from over 240 investors nationwide.

19. Brennan and Dyer prepared an Executive Summary, which serves as an offering document and has been shown to prospective investors in the Scenic City

Companies. The document has been in use, largely unchanged, since 2008. According to the Executive Summary, the eight Scenic City Companies were preparing to file Form 10 Registration Statements with the Commission, which would enable each company's shares to be publicly traded. An early version of the Executive Summary stated that the Form 10 filings were expected to be completed in early 2009; a more recent version altered that wording to state that the filings were expected to be completed in the first half of 2016.

20. The Executive Summary also stated that each respective Scenic City Company was to be a public "blank check" or "shell" company that would merge with a small private company that wanted to go public, "thereby enabling these . . . target companies to begin reporting with the SEC and, ultimately, to trade the shares publicly in the over-the-counter (OTC) market." According to the Executive Summary, it was anticipated that the Scenic City Companies would retain an average of ten percent of the shares of the public entity. The total stated offering amount was $800,000, with investments to be apportioned equally among the eight Scenic City Companies.

21. Brennan and Dyer further stated in the Executive Summary that:

> After evaluating, negotiating and completing mergers between these

blank-check Companies and the operating companies, the Scenic City management anticipates an average public market valuation for each of the merged entities of approximately $20 million, resulting in initial trading levels in the $1 per share range.

22. Combined, these statements represented that each Scenic City Company investor would receive a return of over 800%

**B. Misrepresentations and Omissions in the Scenic City Offerings.**

23. Brennan and Dyer, through Broad Street and the Scenic City Companies, made numerous misrepresentations and omissions related to the Scenic City offerings. The Defendants have not conducted the Scenic City offering according to the plan described in the Executive Summary.

24. First, during the entire eight year offering period, not a single Form 10, the SEC form use in connection with the initial registration of a class of securities with the Commission, has ever been filed with the Commission concerning any of the Scenic City Companies. Indeed, no evidence has been uncovered that the Defendants even attempted to file a Form 10 with the Commission. Consequently, none of the Scenic City Companies' shares have begun publicly trading and no reverse mergers have been completed by the Defendants.

25. The only transaction remotely involving any of the Scenic City

Companies took place just last year, when Dyer arranged for Broad Street to acquire a very small number of shares in a Minnesota company that had completed a reverse merger with an unrelated third party shell company, partly as a result of Dyer's efforts in making introductions among the various parties. Dyer falsely stated in two emails to investors, prepared by him and Brennan, that Scenic City F10 VIII, Inc. had merged with the Minnesota company.

26. In fact, Broad Street was merely granted shares in the Minnesota company as a result of its consulting work. These shares were later apportioned to Scenic City F10 VIII, Inc., but that entity did not merge with the Minnesota company.

27. Second, the Defendants misrepresented and/or failed to disclose accurately the total number of shares sold and outstanding in each of the Scenic City Companies. Each version of the Executive Summary stated that upon completion of the offering, there would be 2.2 million shares outstanding in each of the eight Scenic City Companies, or a total of 17.6 million shares combined. To date, the evidence indicates that a total of over 45 million shares have been sold and are outstanding in the Scenic City Companies, averaging approximately 5.6 million shares per entity. Thus, each shareholder's interest in the Scenic City Companies is

substantially more diluted than what was represented.

28. Third, the Executive Summary touts the experience of Brennan and Dyer, claiming that they had twenty years' experience seeking equity financing for growth-stage companies and that they estimated that their investments had achieved average annual returns of thirty percent. One version of the Executive Summary lists twenty-one transactions that Brennan and Dyer were supposedly involved in during their employment in the investment business. Yet no version of the Executive Summary discloses their disciplinary histories with FINRA and the states of California and Tennessee to investors.

29. For Brennan, the disciplinary history includes three separate complaints that FINRA filed in 1998. The first complaint alleged that he failed to supervise adequately retail trades by Dyer and another representative, and thus failed to detect excessive mark-downs. The second complaint which was consolidated with the FINRA action, alleged that Brennan engaged in unauthorized and unsuitable trading in a customer's account, claimed falsely that the trades were errors, overstated the value of the account and guaranteed the customer against losses. FINRA accepted Brennan's offers of settlement in both matters, issuing orders in 1999 that censured Brennan, barred him from association with any member, and

fined him $10,000 (with collection efforts suspended unless Brennan were to seek reentry into the securities industry.)

30. For Dyer, the disciplinary history includes a complaint filed by FINRA in 1998 against him, his member firm and others, alleging that Dyer purchased stock from his retail customers at excessive mark-downs and engaged in unauthorized trading. In 1999, FINRA accepted Dyer's offer of settlement and issued an order censuring him, suspending him from association with any member for sixty days and fining him $10,000 with collection efforts suspended unless he were to seek reentry into the securities industry.

31. In addition, in 2005, the California Department of Corporations issued a desist-and-refrain order against Brennan, Dyer and a company they operated for the unauthorized sale of securities issued by the company in that state. In August 2011, the Tennessee Securities Division concluded an investigation by sending warning letters to Brennan and Dyer recounting allegations that they had sold unregistered securities with multiple misrepresentations and omissions and putting them on notice that, among other things, any future complaints received concerning them would be viewed with heightened scrutiny.

32. Finally, on February 22, 2016, the Tennessee Securities Division filed a

cease-and-desist order against Broad Street, Brennan and Dyer, in connection with the conduct at issue in this matter, alleging that they had sold unregistered securities, were not registered to sell securities in Tennessee and had engaged in fraud by failing to disclose the existence of the California desist-and-refrain order.

## B. Misuse of Investor Funds

33. The Defendants also misrepresented how they would use the funds raised in the Scenic City offerings. Specifically, Brennan and Dyer diverted virtually all of the funds raised from Scenic City investors to pay what appears to be their personal living expenses, as well as to pay for Broad Street's operating expenses.

34. The investment funds were deposited into Broad Street's bank account. No individual bank accounts exist for any of the Scenic City Companies.

35. From January 2010 through February 2016, more than 92% of the money coming into Broad Street's bank account came from Scenic City investors ($3.98 million vs. $4.32 million total). Approximately $2.1 million was withdrawn from Broad Street's bank account. Of this amount, $940,000, or 44%, went to Dyer's bank accounts, $348,000, or 16%, was transferred to a bank account in the name of Ridgecrest Capital Corporation ("Ridgecrest") and then used by Brennan for personal expenses, and $455,000, or 21%, was withdrawn by wire transfers.

36. According to the bank account statements for Ridgecrest from 2010 through 2015, Brennan used the funds deposited in the account for his personal expenses. For example, he withdrew or transferred approximately (1) $151,000 in cash; (2) $142,000 to the IRS; (3) $39,000 to various insurance companies; (4) $30,000 to his wife, Carole J. Brennan; and (5) $6,600 to a cable television company. These statements do not reflect any type of investments on behalf of the persons who sent funds to Broad Street for investments in the Scenic City Companies.

37. Carole Brennan provided no goods or services in return for the funds she received from the Ridgecrest account, and was thus unjustly enriched.

38. Ridgecrest was administratively dissolved in 2006 and Brennan now uses the Ridgecrest account it as his personal bank account.

39. Dyer's bank account statements for this same period show transfers of (1) $286,000 to his wife, Alison Dyer; (2) $38,000 in cash; (3) $71,466 to various credit card companies; and (4) $23,500 to a collections agency in 2014. As with Brennan's Ridgecrest account, none of the transfers from Dyer's account suggest any type of investment on behalf of the persons who sent funds to Broad Street for investments in the Scenic City Companies.

40. Alison Dyer provided no goods or services in return for the funds she received, and was thus unjustly enriched thereby.

41. Virtually none of the funds have been used as represented in the offering documents or in any way to fund the Scenic City Companies, i.e., to invest in other companies or to register their securities with the Commission.

**COUNT I—FRAUD**

**Violations of Sections 17(a)(1) of the Securities Act**
**[15 U.S.C. § 77q(a)(1)]**

42. Paragraphs 1 through 41 are hereby re-alleged and are incorporated herein by reference.

43. Starting in 2008 and continuing at present, the Defendants, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and artifices to defraud purchasers of such securities, all as more particularly described above.

44. The Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud.

45. While engaging in the course of conduct described above, the Defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severely reckless disregard for the truth.

46. By reason of the foregoing, Defendants directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II—FRAUD

**Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act**
**[15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]**

47. Paragraphs 1 through 41 are hereby re-alleged and are incorporated herein by reference.

48. Starting in 2008 and continuing at present, the Defendants, in the offer and sale of the securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

a. obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

b. engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities,

all as more particularly described above.

49. By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III—FRAUD

**Violations of Section 10(b) of the Exchange Act**
**[15 U.S.C. § 78j(b)]and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

50. Paragraphs 1 through 41 are hereby re-alleged and are incorporated herein by reference.

51. Starting in 2008 and continuing at present, the Defendants, in connection with the purchase and sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:

a. employed devices, schemes, and artifices to defraud;

b. made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c. engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities,

all as more particularly described above.

52. The Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business. By engaging in such conduct, the Defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severely reckless disregard for the truth.

53. By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully prays for:

**I.**

Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that the Defendants and Relief Defendants named herein committed the violations alleged herein and that the Relief Defendants were unjustly enriched as described herein.

**II.**

An order expediting discovery to determine whether the Defendants are conducting an ongoing offering fraud and to preserve the status quo.

**III.**

A temporary restraining order and preliminary and permanent injunctions enjoining the Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, by personal service or otherwise, and each of them, from violating, directly or indirectly, Section 17(a) of the Securities Act, [15 U.S.C. 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**IV.**

An order prohibiting the Defendants from destroying, altering, concealing or removing documents and requiring the preservation of relevant documents, so that full discovery may be had in this matter.

**V.**

An order requiring accountings by the Defendants of the use of the proceeds of the sales of the securities described in this complaint.

**VI.**

An order freezing the Defendants' assets in order to assure a source to satisfy that part of the final judgment which might ultimately be ordered.

**VII.**

An order requiring the Defendants and Relief Defendants to disgorge their ill-gotten gains or unjust enrichment, with prejudgment interest thereon, to effect the remedial purposes of the federal securities laws.

**VIII.**

An order pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)] imposing civil penalties against the Defendants.

**IX.**

An order pursuant to Section 20(g) of the Securities Act and Section 21(d)(6)(A) of the Exchange Act imposing penny stock bars against the Defendants.

**X.**

An order pursuant to Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act imposing officer and director bars against the Defendants.

**XI.**

Such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

Dated: July 20, 2016

Respectfully submitted,

/s/ Robert F. Schroeder
Senior Trial Counsel
Georgia Bar No. 001390
Email: schroederr@sec.gov
Tel: (404) 942-0688

M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
Email: loomism@sec.gov
Tel: (404) 842-7622

COUNSEL FOR PLAINTIFF
U.S. Securities and Exchange Commission
950 East Paces Ferry Road NE, Suite 900
Atlanta, Georgia 30326-1382
Tel: (404) 842-7600
Fax: (404) 842-7666